# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Dublin Division

FILED

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 10:11 am, Sep 30, 2015

In the matter of:                    )
                                     )                    Chapter 13 Case
PHILLIP CRAIG HIGHTOWER,             )
                                     )                    Number 14-30452-EJC
          *Debtor*.                  )

---

## OPINION ON DEBTOR'S OBJECTION TO AMENDED ORDER DISMISSING CHAPTER 13 CASE BEFORE CONFIRMATION AND MOTION FOR TURNOVER OF FUNDS FROM TRUSTEE

Pending before the Court is an Objection and Motion for Turnover of Funds From Trustee[1] filed by the debtor, Phillip Craig Hightower ("Debtor"), acting *pro se*, in response to this Court's Amended Order Dismissing Chapter 13 Case Before Confirmation ("Amended Dismissal Order") (dckt. 48) entered on May 14, 2015. The Court must determine how funds held by the Chapter 13 Trustee (the "Trustee") should be distributed when a case is dismissed prior to confirmation. The matter came on for hearing on July 14, 2015 at which time the Debtor appeared *pro se* and the Trustee appeared through counsel, Brent Myer. For the reasons stated below, the Debtor's Objection is SUSTAINED and the Debtor's Motion for Turnover is GRANTED.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28

---

[1] The Debtor mailed a letter dated May 20, 2015 to the Court, c/o Lucinda B. Rauback, Clerk, which was docketed on June 1, 2015. (Dckt. 53). The letter asserts an *objection* to the disbursal of funds on hand with the Chapter 13 Trustee at the time of dismissal. The letter also seeks return of those funds. The clerk designated the Debtor's letter as Objection and Motion for Turnover. (Dckt. 53).

%AO 72A
(Rev. 8/82)

U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B),(E) and (O). In accordance with Bankruptcy Rule 7052, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. Procedural Background

The Debtor filed his Chapter 13 petition on November 4, 2014. (Dckt. 1). Only two secured claims were filed in the case. Citizens Bank of Laurens County ("Citizens Bank") filed Claim No. 2 in the amount of $41,328.56, claiming a security interest in the following collateral: 2004 Nissan Armada, 2005 Kia Sedona, 1995 Ford Superwagon, UCC covering all furniture, fixtures and equipment owned by Hightower & Associates, and a UCC covering a 1989 Triple A modular building. (Claims Register 2-1). Excluding the Hightower & Associates business assets, the Debtor valued Citizens Bank's collateral at $7,250.00 in Schedule "A". (Dckt. 15). He valued these same assets at $7,250.00 in Schedule "B." *Id.* Nationstar Mortgage, LLC ("Nationstar") filed Claim No. 3 in the amended amount of $146,315.40, claiming a security interest in the Debtor's primary residence located at 701 Hillcrest Parkway, Dublin, Georgia. (Claims Register 3-2). Nationstar's Proof of Claim listed Cenlar FSB ("Cenlar") as the entity receiving notices and payments on the claim.[2] *Id.*

---

[2] Cenlar FSB is the servicing agent for Nationstar's mortgage with the Debtor and filed all objections in this case on behalf of Nationstar. Accordingly, the Court will refer to Cenlar when referencing this claim.

On December 4, 2014, the Debtor filed his Chapter 13 plan which provided for monthly plan payments of $500.00 for the applicable commitment period of 36 months. (Dckt. 14). The plan also provided as follows:

> 2. From the payments so received, the trustee shall make disbursements as follows:
>
> > (a) The Trustee percentage fee as set by the United States Trustee.
> >
> > (b) Attorney fees allowed pursuant to § 507(a)(2) of $ -0- to be paid in accordance with applicable General Orders of this Court.
> >
> > (c) Other § 507 claims, unless provided for otherwise in the plan will be paid in full over the life of the plan as funds become available in the order specified by law.
> >
> > (d) _x_ Monthly payments according to the contract on the following long-term debts. § 1322(b)(5). (Payments which become due after the filing of the petition but before the month of the first payment designated here will be added to the pre-petition arrearage claim):

| Creditor | Month of First Trustee Payment | Initial Monthly Payment |
|---|---|---|
| Cenlar Mortgage Co. | January 15, 2015 | $300.00[3] |
| Citizens Bank | January 15, 2015 | $200.00 |

(Dckt. 14, ¶ 2).

The Debtor's plan made no provision for a dividend to unsecured creditors, nor did it provide for cure payments of pre-petition secured claims. Most important to this decision, the plan did not provide for adequate protection payments and was never amended to do so.[4]

The Debtor's plan drew several objections to confirmation by parties in

---

[3] On December 4, 2014, pursuant to Bankruptcy Rule 3002.1, Cenlar filed a Notice of Payment change reflecting a new monthly payment of $1,359.64. (Dckt. 16).

[4] In the pre-printed portion of the Debtor's Chapter 13 plan, the Debtor left the following boxes blank: Debtor will make §1326(a)(1) pre-confirmation lease and adequate protection payments on allowed claims of the following creditors: ☐ Direct to the Creditor; or ☐ To the Trustee. (Dckt. 14, ¶ 3).

interest. The Trustee filed its first objection setting out 15 separate deficiencies (dckt. 23), and a second objection identifying four additional objections (dckt. 26). Cenlar filed an objection pointing out the Debtor's miscalculation of the monthly payment, noting the Debtor's negative disposable income as an impediment to confirmation under 11 U.S.C. § 1325(a)(6), and objecting to the Debtor's proposed valuation and cram down of its collateral in violation of 11 U.S.C. § 1322(b)(2). (Dckt. 25). Citizens Bank also filed an objection to the Debtor's plan on the grounds that the same was not feasible, was not proposed in good faith, and seeks to improperly value its collateral. (Dckt. 27).

### B. Dismissal of the Debtor's Case

The Debtor's case initially came on for confirmation on January 13, 2015, and was continued to April 14, 2015, in large part to allow the Debtor to retain counsel. (Dckt. 35). The case came on for confirmation on April 14, 2015, but once again the Debtor appeared *pro se*, although he was in discussions with an attorney present in the courtroom regarding possible representation. The Court granted a continuance of the confirmation hearing until May 7, 2015, in the hope that once the Debtor had counsel, the plan deficiencies, incomplete schedules, and other matters could be resolved.

The Debtor's case came on for confirmation for the third time on May 7, 2015. The Debtor again appeared *pro se*. At the hearing, the Trustee recited the numerous deficiencies in the Debtor's plan. In addition, the Court examined the Debtor regarding both his Schedule I and Schedule J and it was apparent that neither schedule was accurate. The Court denied confirmation and dismissed the case. The Court also granted stay relief to

Cenlar with respect to the Debtor's principal residence located at 701 Hillcrest Parkway, Dublin, Georgia. (Dckt. 45).

On May 12, 2015, the Court entered an Order on Confirmation which recited: "Confirmation is: Denied and the case is dismissed. Without prejudice." (Dckt. 47). Thereafter, on May 14, 2015, the Court issued its Amended Dismissal Order. (Dckt. 48). Under the terms of this Amended Dismissal Order, the Trustee was directed to distribute funds on hand at the time of dismissal as follows:

> During the pendency of this case, each secured creditor who was to receive payments from the Chapter 13 Trustee under the terms of the Debtor's proposed plan has received no payment. The Chapter 13 Trustee may have accumulated payments made by the Debtor pending confirmation of a Chapter 13 plan. 11 U.S.C. §1326(a). Each secured creditor's interest in its collateral has been impaired to the extent that it has received no payment and has been prevented from foreclosing its security interest by the automatic stay of 11 U.S.C. §362(a).

> The Debtor provides "adequate protection" to each secured creditor by making pre-confirmation payments to the Chapter 13 Trustee. In re Coplin, No. 486-00886 (Bankr. S.D.Ga 1987); 11 U.S.C. §361. Upon confirmation of the Debtor's plan, these accumulated funds would have been distributed pro-rata to secured creditors to compensate them for the delay they have endured as a result of the automatic stay. Because this case is being dismissed prior to confirmation of a plan, secured creditors will receive no payment on the account of the plan; the "adequate protection" provided by the Debtor in the form of payment to the Trustee has proved to be inadequate.

> When "adequate protection" proves to be inadequate, each affected secured creditor is entitled to alternative compensation in the form of an administrative expense claim. 11 U.S.C. §507(b). They are entitled to pro-rata satisfaction of those claims out of the monies which the Debtor has paid to the Trustee. 11 U.S.C. §1326(a)(2).

> IT IS THEREFORE THE ORDER OF THIS COURT that:

> 1) This Chapter 13 case is dismissed.

> 2) After deducting the costs of administration, including attorney's fees

(if applicable) not to exceed $300.00, the Trustee shall pay funds remaining in this case, if any, pro-rata to creditors holding allowed secured claims which were to be paid through the Trustee under the terms of the Debtor's unconfirmed plan, unless a party in interest files a written objection within fourteen (14) days from the date of this Order.

3) Creditors are at liberty to pursue their legal remedies.

(Dckt. 48).

In response to the Amended Dismissal Order, the Debtor, a party in interest, objected to the proposed disposition of post-petition payments made to the Chapter 13 Trustee.

### C. Hearing on the Debtor's Objection and Motion for Turnover

Because the Debtor timely objected to the Court's Amended Dismissal Order, the matter was scheduled for hearing on July 14, 2015. The Debtor appeared *pro se* and the Trustee appeared through counsel, Brent Myer. No creditor appeared in response to the Debtor's objection and motion for turnover.[5]

At the hearing on July 14, 2015, the only factual inquiry made by the Court was the amount and timing of plan payments made by the Debtor. The Debtor appeared without any records or receipts, while the Trustee had the benefit of his electronic records of receipts and disbursements. The Court finds that the Debtor made a total of 6 monthly plan payments of $500.00 each, from December 2014 through May 2015, for a total of $3,000.00. In addition, consistent with his Application to Pay Filing Fee In Installments

---

[5] The Court again notes that neither secured creditor filed a motion seeking adequate protection payments. While both Cenlar and Citizens Bank objected to confirmation, neither did so on the grounds that the Debtor's plan failed to provide for adequate protection payments nor on the grounds that they had not received adequate protection payments directly. (Dckt. 25, 27).

(dckt. 4), the Debtor paid $207.00 to the Clerk of Court on December 4, 2014.  The balance of the filing fee ($103.00) was paid on May 5, 2015 by the Trustee, from the plan payments made by the Debtor, which would reduce the funds on hand to $2,897.00.  In addition, the Trustee proposes (or already has) deducted $240.00 as its commission[6], leaving a balance for distribution to secured creditors in the sum of $2,657.00.

At the hearing, the Debtor contended that he is entitled to a refund of the funds on hand because of the recent Supreme Court ruling in *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015).  In response, the Trustee filed a brief in which he argued that the ruling in *Harris* is not applicable in this case. (Dckt. 59).  The Trustee further argues that under 11 U.S.C. § 349(b) sufficient cause exists for the Court to order that the money on hand be disbursed pro rata to secured claim holders.  *Id.*  Citizen Bank also filed a response on August 7, 2015. (Dckt. 60).  However, Citizen Bank simply contends, without reference to any applicable law, that "the Debtor is not entitled to the have the funds returned to him, but instead the funds should be paid to the creditors according to their respective priorities." *Id.*

### D. Chapter 7 Trustee's Motion for Turnover

The Debtor's case was dismissed on May 12, 2015.  (Dckt. 46). The Debtor filed a new Chapter 13 case in this Court on May 27, 2015 (Bankr. No. 15-30144-EJC, Dckt. 1).  The Debtor moved to convert his newly filed case to Chapter 7 on July 15, 2015. (Bankr. No. 15-30144-EJC, Dckt. 34). Todd Boudreaux was appointed Chapter 7 Trustee

---

[6] A trustee's entitlement to commission on plan payments in a case dismissed before confirmation has been the subject of several published opinions. Under 28 U.S.C. § 586(e)(2), a trustee's percentage fee is calculated at the time of receipt. Further, 11 U.S.C. § 1326(b) contemplates the trustee taking his fee before confirmation. *See Nardello v. Balboa (In re Nardello)*, 514 B.R. 105, 113-14 (D. N.J. 2014).

in the case and conducted a §341 meeting on September 10, 2015. (Bankr. No. 15-30144-EJC, Dckt. 51). Having become aware of the Debtor's pending Objection seeking return of the funds held by the Trustee, Boudreaux filed a Motion for Turnover of Property of the Estate in this case. (Dckt. 62). Boudreaux recites in his motion the procedural history of the two cases as described above, and then asserts the following:

> [Todd Boudreaux] takes no position regarding whether or not the Chapter 13 Trustee should pay the funds to the secured creditors in [this case] as adequate protection payments. However, in the event the Court determines that these funds should be paid to the Debtor rather than to secured creditors, those funds constitute property of the Chapter 7 Estate in Case No. 15-30144-EJC, and should therefore be paid to [Todd Boudreaux] as Trustee in that Chapter 7 case.

*Id.* at ¶ 4.

The Court took the Debtor's Objection and Motion under advisement after the hearing on July 14. 2015. Boudreaux's Motion for Turnover was not filed until September 15, 2015, and that motion has not been heard.

## III. CONCLUSIONS OF LAW

### A. Applicability of *Harris v. Viegelahn*

In seeking turnover of the funds in this case, the Debtor relies on the Supreme Court's recent decision in *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015), which held that when a confirmed Chapter 13 case is converted to Chapter 7, the post-petition earnings of the debtor in the hands of the Chapter 13 trustee must be returned to the debtor. In *Harris*, the Supreme Court rejected the Chapter 13 trustee's argument, that upon conversion, undistributed funds must be distributed to creditors pursuant to §§ 1326(a)(2) and 1327(a). *Harris v. Viegelahn*, 135 S.Ct. 1829, 1839 (2015). Rather, the Supreme Court based its

holding on § 348, which only governs conversions. In referencing § 348(f)(1)(A), the Supreme Court held "[a] debtor's post-petition wages, including undisbursed funds in the hands of the trustee, ordinarily do not become part of the Chapter 7 estate created by conversion."[7] *Id.* at 1837. The Supreme Court further held that § 348(e) terminates the services of a Chapter 13 trustee, including the disbursement of payments to creditors under § 1326(c), when a case is converted from Chapter 13 to Chapter 7.[8] *Id.* at 1838. Therefore, "[t]he moment a case is converted from Chapter 13 to Chapter 7 . . . the Chapter 13 trustee is stripped of authority to provide [the disbursement of payments to creditors]." *Id.*

The Debtor's reliance on *Harris* is unavailing. Here, the Debtor's case was neither confirmed, nor converted to Chapter 7. Therefore, the Trustee's services were not terminated under 11 U.S.C. § 348(e), and thus he still holds the authority to disburse funds Debtor pursuant to § 1326(a)(2). As discussed below, the Court finds that the specific provisions of §§ 349(b)(3) and 1326(a)(2) govern the trustee's disbursement of funds in a Chapter 13 case that has been dismissed, but not yet closed. *In re Kirk*, No. 14-42186, 2015 WL 5097741, at *2 (N.D. Ohio Aug. 27, 2015).

### B. The Interplay Between Sections 349(b)(3) and 1326(a)(2)

The effect of a dismissal is governed by § 349. Section 349(b)(3) stands for the general principle that "[u]nless the court, for cause, orders otherwise, a dismissal of a case . . . (3) revests the property of the estate in the entity in which such property was vested

---

[7] Section 348(f)(1)(A) provides, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the [initial Chapter 13] petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

[8] Section 348(e) provides, "[c]onversion [from Chapter 13 to Chapter 7] terminates the service of [the Chapter 13] trustee."

immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3).

In Chapter 13 cases, however, the Court must also look to the specific directives of § 1326

when a dismissal occurs. *Id.* *3. Section 1326(a) provides, in pertinent part:

> (a)(1) Unless the court orders otherwise[9], the debtor shall commence
> making payments . . . in the amount–
>
> > (A) proposed by the plan to the trustee;
> >
> > * * *
> >
> > and
> >
> > (C) that provides adequate protection directly to a creditor
> > holding an allowed claim secured by personal property to the

---

[9] Our Court has ordered otherwise. In response to the amendments to 11 U.S.C. § 1326, our Court entered General Order 2005-5, Order Regarding Lease and Adequate Protection Payments, which provides in relevant part as follows:

> · 11 U.S.C. § 1326(a) provides that Chapter 13 debtors shall make certain payments "directly" to certain lessors or creditors, "unless the Court orders otherwise."
>
> After due consideration the Court enters this Order for the purpose of permitting debtors in their Plan to elect whether to (1) remit those payments "directly" or (2) remit those payments to the Trustee, earmarked for the purpose set forth by Congress.
>
> * * *
>
> IT IS THEREFORE ORDERED that pursuant to 11 U.S.C. §§ 1326 and 105, commencing October 17, 2005, debtors are authorized to designate in their Chapter 13 Plans whether lease and adequate protection payments shall be made "directly" to the creditor or remitted to the Trustee.
>
> If these payments are remitted to the Trustee they shall be paid to the creditor designated in the Plan after a claim is allowed until confirmation or further order of this Court. Creditor's rights in these funds shall be governed by the terms of a confirmed Plan, further order of Court, or in the case of a dismissal prior to confirmation, remitted to the creditor for whose benefit they were paid by Debtor and held during the pendency of the case.

Bankr. S.D. Ga. Gen Order 2005-5.

extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

(2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

(3) Subject to section 363, the court may, upon notice and hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan.

\* \* \*

11 U.S.C. § 1326(a).

As set forth above, § 349(b)(3) provides that a dismissal terminates the bankruptcy estate and the former property of the estate revests in the entity which held the property before commencement of the case. More specifically, § 1326(a)(2) provides that post-petition funds received by the Chapter 13 trustee should be returned to the debtor if the case is dismissed prior to confirmation. Thus, §1326(a)(2) refers to a subset of property referred to more generally in §349(b)(3) and provides for different treatment of plan payments upon dismissal of a case than that provided for other types of estate property. *In re Lewis*, 346 B.R. 89, 107 (E.D. Pa. 2006). Accordingly, the Court finds that the specific directives in §1326(a)(2) control over the general directive of § 349(b)(3) in determining how to distribute the remaining funds on hand. *Kirk*, 2015 WL 5097741, at \*3.

### C. Section 1326(a) Controls Distribution

In his brief, the Trustee argues that the "for cause" provision of §349(b)(3) allows the Court to order that the money on hand be disbursed pro rata to secured creditors. The Trustee contends that sufficient cause exists because Citizens Bank and Cenlar received no compensation for the six months that the Debtor benefitted from the automatic stay. However, if Citizens Bank and Cenlar expected to be compensated during the pendency of the case, they should have requested adequate protection payments. *Id.* at *5 ("Section 1326(a)(3) allows a party to seek modification of a chapter 13 plan, which includes seeking a court order requiring adequate protection payments."). Citizens Bank and Cenlar failed to request adequate protection payments or raise the absence of such payments in any of their objections to the Debtor's plan. Accordingly, the Court will not allow Citizens Bank to make a belated adequate protection claim. Because insufficient cause exists under § 349(b) to avoid the revesting of post-petition wages in the Debtor, the Court will turn to the directives of §1326(a)(2) to determine the disbursement of the Trustee's funds on hand.

Section 1326(a)(2) does not provide for automatic or immediate revestment of funds to the Debtor. See 11 U.S.C. § 1326(a)(2). Instead, the Trustee must first pay administrative expenses allowed pursuant to § 503(b) and "any payments not yet due and owing to creditors pursuant to § 1326(a)(3)."[10] *Id.* Neither of these two exceptions apply. First, there are no administrative claims under § 503(b). Second, the Debtor's plan never provided for any adequate protection payments, and neither Citizens Bank, nor Cenlar,

---

[10]Under § 1326(a)(3), "the court may, upon notice and hearing, modify, increase, or reduce the payments required under [§1326(a)] pending confirmation of a plan." 11 U.S.C. §1326(a)(3).

⬙AO 72A
(Rev. 8/82)

sought adequate protection payments. Accordingly, the post-petition funds held by the Trustee should be returned to the Debtor.

## IV. CONCLUSION

Pursuant to its express terms, §1326(a)(2) governs the disbursement of undistributed plan payments upon dismissal of a Chapter 13 plan that has not been confirmed. As discussed above, the remaining funds in this case should be returned to the Debtor because there are no administrative expenses or adequate protection payments due. Because the Court has granted the Debtor's Motion for Turnover, the Trustee will be required to disburse the remaining $2,657.00 of funds on hand to the Debtor. However, Trustee Boudreaux's Motion for Turnover of these same funds has not yet been heard by this Court. If Trustee Boudreaux's relief is granted, the Debtor may be required to turn those same funds over to Boudreaux for distribution to creditors in his Chapter 7 case. A separate order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 30th day of September, 2015.

Edward J. Coleman, III
United States Bankruptcy Judge